# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1864.

---

THE STATE, THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS, v. MILLER, COLLECTOR OF THE TOWNSHIP OF MORRIS.

1. The charter of the Morris and Essex Railroad Company subjects the company to a tax of one and an half per cent. on the cost of the road, as soon as the net proceeds shall equal seven per cent., and provides that no other tax shall be levied upon the company. By the terms of the charter, it may be altered or repealed by the legislature. The subsequent general tax law of 1862 subjected to taxation the real estate of all private corporations, "except those which, by virtue of any irrepealable contract in their charter or other contracts with the state, are expressly exempt from taxation;" and it repealed all acts, whether special or local, inconsistent with its provisions.

   *Held,* that the tax law of 1862 repealed the provisions of the charter in regard to taxation, and that the assessment made upon the real estate of the company in the township of Morris was rightfully made under the general law.

2. "No irrepealable contract" can result from provisions in a charter which is made in terms subject to alteration, amendment, or repeal by the power granting it.

3. When the right to alter or amend a charter, whenever the public good may require, is reserved, the legislature is the proper tribunal to determine when the right shall be exercised.

State, Morris and Essex Railroad Co., Pros., v. Miller, Collector.

In error to the Supreme Court.    In matter of taxation.

For case and opinion of Supreme Court, *vide* 1 *Vroom* 368.

The case was argued by *T. Little* and *C. Parker*, for plaintiffs, and *J. Vanatta*, for defendant.

*VAN DYKE, J., (dissenting from a majority of the court). It seems that the assessor of the township of Morris, in the county of Morris, assessed the Morris and Essex Railroad Company, among other things, for twenty acres of land, including the railroad track, depot buildings, and lot on which they stand, with two other lots of land, and 200 cords of wood, the whole valued at the sum of $60,000.   To have this assessment set aside is the object for which these proceedings are brought before us.

This assessment is made, as I understand it, on all the property, both real and personal, which the company at the time owned in that township, and if this assessment is correct, then it is proper for every other assessor in each of the townships in the state through which the road runs, or in which the company owns any property, either real or personal, to do the same thing.   This would result as a matter of course, if the several assessors should do their duty, in taxing the company on every farthing's worth of property which they own in the state, including houses, lands, depots and buildings, railroad track, railroad bed, locomotives, cars, wood, coal, horses, carriages, spades, shovels, picks, and every other kind of property which it is possible for them to own of a tangible nature, and is possibly presumed to be so in fact ; the whole of the property into which their paid in capital and accumulated surplus, if any they have, as well as that for which they may have incurred debts, has been converted.   Such a taxation would not be a very extraordinary

* See note at end of case.

exertion of power on the part of the legislature, because it would be merely taxing the company for the whole of the property which they own ; but by the eighth section of the tax law of 1862, this company, if solvent, is clearly liable to be taxed in the township where its principal office is, on the whole of its capital paid in and accumulated surplus. Such taxation is not only authorized by the act, but it was declared to be the correct mode of taxing corporations by this court at the last term in the Camden cases, and such taxation, if the officers have done their duty, has also been imposed. Now no one, I think, can fail to perceive that all this property thus taxed in the different townships of the state, is precisely the property which is represented by the paid in capital and accumulated surplus, and which is also taxed as such. If then this company owns no property except what is represented by its paid in capital and surplus, and we know nothing to the contrary, and if the taxation under consideration is correct, then it is quite clear that every thing that it owns is taxed, or is taxable at least twice over in these two different ways. But can this be proper? Can we suppose that such was the intention of the legislature? I think not. I think the only way in which a solvent corporation can be taxed, is upon its paid in capital and surplus, subject perhaps to some exceptions.

It is claimed that the 13th section of the act requires the *real* estate of private corporations, situate within this state, to be assessed in the township or ward in which it is located, and the amount of such assessment is to be deducted from the capital stock and surplus and funded debt, or of the valuable assets of such corporation. This deduction shows that it was not intended to tax the property of corporations twice over, even when it consists in part of real estate located in different townships or wards, and possibly in different counties from those in which they carry on their business.

When then is to be understood from the provisions and directions of this 13th section? I think they are not difficult

of solution. The 8th section, which prescribes the mode of taxing corporations, is not confined to railroad companies. It extends to every kind of corporation which can exist in the state. Most, if not all, of these corporations are permitted to own real estate not needed for the purposes of the corporation, such, for example, as they may obtain in securing and collecting debts due them. The Supreme Court held in several cases, that real estate thus held and not connected with or necessary to the carrying on of the business of the corporation, was taxable, although by the terms of the charter, the company paid a specific sum annually to the state, and was exempted from all other assessments whatever. It was this kind of real estate which the legislature doubtless had in view. Although it might be covered by the general assessment against the capital stock and surplus, yet it was intended to give to the townships in which the lands were located, the benefit of such assessments, and then let the amount be deducted from the amount of their capital stock and surplus in the township where such capital and surplus had been assessed. But can it be that this 13th section was meant to apply to a railroad which might extend from Cape May to the New York line, passing possibly through a hundred townships, and for the purchase of the land for which, and for the grading of which, and for the procuring and laying of the rails of which, with other expenses, had absorbed the whole of its capital and more besides? Can it be, I ask, that the legislature intended to say, that the whole value of such a road should be first assessed in one place, in the shape of capital stock and surplus, and then that each fractional part of the road, track, real estate, appurtenances, and personal property should be again assessed in each of the townships in which the road should be located or the property found, and then have each of the amounts sent to be deducted from the amount of the capital stock and surplus, at the place of the principal office where such assessment was first made? I cannot think so, nor do I think that the law can bear such

a construction. If the company had incurred debts in the purchase and construction of the road and other property, the fractional parts might far exceed the whole amount of the paid in capital, so that no such deductions could be made.

I do not know what the present paid in capital of this company may be, but we may suppose it to be $3,000,000. We may also suppose it possible that they may have borrowed $3,000,000 more, by issuing their bonds therefor. This sum too they may have also expended in one way and another, on or along this road in the different townships. Their whole property, then, to the amount of $6,000,000, will be assessed in the different townships, and then the amount thus raised is to be deducted from their paid in capital of $3,000,000.

I think, therefore, that the only true construction of the act, when applied to a railroad company is, that all its real as well as personal estate forming a part of their road, or immediately connected with and used in the necessary operation and working of it, should be taxed as a part of its capital stock and surplus, and in that form and not otherwise. This is the way in which the banks and many other corporations are assessed, although their actual assets in consequence of debts incurred, may double their paid in capital and surplus twice over.

For this reason, therefore, I think the assessment is in the main erroneous and should be set aside, with the exception of the lots mentioned in the assessment; these do not seem to be a necessary part of the road nor needful to its operation. If they are not, the assessment as to them should stand. If the parties do not agree about this, the matter may be referred by the Supreme Court to a commissioner to ascertain and report the facts.

It is insisted also, in behalf of this company, that the contract in their charter which exempts the company from taxation, except in the way provided by the charter, has not been repealed by the tax law of 1862, for the reason that it has not been done in any direct and express words, but only, if at all, by the general enactment which repeals all acts and

parts of acts, whether special or local or otherwise, inconsistent with that act. It was held by the Supreme Court, in the case of *This Same Company* v. *Minton, Collector*, 3 *Zab*. 529, in which the road was assessed, that the tax law of 1851, which enacted that all lands within this state, whether owned by individuals or corporations, should be liable to taxation, and which in terms repealed all acts and parts of acts inconsistent therewith, did not repeal the contract between the state and the company, for the reason that it did not do so in express terms. The language of the court was that " the reasonable inference always is, that when the legislature intend to take away these, (the exemption privileges they will do it in express terms, and *e converso*, when they do not do it in express terms, they do not intend to do it." This, it seems to me, is sound sense, sound law, and a sound construction of the statute, and I do not see in what that case differs from the present, except that our present tax law contains in the repealing clause the words " whether special or local or otherwise;" but these words add no additional force to the clause, for the words all acts and parts of acts inconsistent with the act then being passed, certainly included every kind of act, whether special, local, or otherwise. There were no acts or parts of acts inconsistent with the act of 1851, except such as were either special, local, or otherwise, and they were all as fully covered by the repealing clause of that act as if they had been expressly inserted therein; and the exemption in the company's charter was just as inconsistent with the act of 1851 as it is with the act of 1862, and the decision of the Supreme Court applies with all the force to the one that it does to the other. I think, also, that the tax, for this reason, is unlawful, but I shall not attempt to discuss the point at length.

It is further insisted that the exemption in the charter is not repealed, for the reason that this corporation, and others like it, are expressly excepted from the operation of the tax law of 1862. This reason, in my judgment, should also prevail. That certain corporations *are* excepted from the effect

of this law is very certain. The language of the exception is, "except those (corporations) which, by virtue of any *irrepealable* contract in their charters or other contract with the state, are expressly exempted from taxation." I am not aware of any corporations in the state to which this exception applies but to railroad companies. Various of the railroad companies of the state, perhaps all of them, have, by their charters, contracts with the state, by which they are expressly exempt from taxation; some of them are repealable, and some of them are irrepealable contracts. And these two kinds are the only known contracts between the state and any of its corporations which exempts them from taxation, and these two are in all cases substantially alike, except that one is repealable and the other is not; but they are certainly both contracts with the state, and they are certainly both exemption contracts. The legislature mentions one of these contracts in express terms by calling it an irrepealable contract, and refers to the other, not by particular designation, but under the description of "*other* contract with the state." But whether the contract for exemption be of the irrepealable kind or of the "*other*" kind, both are certainly excepted, by express words, from the operation of the tax law of 1862.

It was suggested that the expression, "other contract with the state," means some contract not in their charter; but the law does not say so, and the language in itself cannot bear such interpretation. It speaks of an *irrepealable* contract in their charters, but the other contracts with the state, that is other than the irrepealable ones, may be either in the charters or outside of them, if such thing be possible, because the expression, "or other contract with the state," means any other and every other contract, no matter in what form made, if it be one exempting the company from taxation. The tax law, therefore, in express terms, excepts all contracts of exemption from taxation, whether they be irrepealable contracts or any other kind of exemption contracts. And I do not see how we can doubt that such was the inten-

tion of the legislature, for we cannot suppose them guilty of the folly of attempting to except only irrepealable contracts from the effect of the enactment, as we are bound to suppose that they were quite aware, that they could not repeal an irrepealable contract if they made the effort, and therefore we cannot suppose they made the attempt to protect a class of contracts, which was entirely beyond their reach; and if it was the intention of the legislature to confine the exception to irrepealable contracts only, why did they not do so? Why did they extend it in express terms to other contracts with the state? Why, if they so intended, did they extend it at all?

The New Jersey Railroad Company have one of these exemption contracts with the state. The Morris and Essex company have also just such a contract, in all its essential features, so far as the contract itself is concerned. The only difference between them is, the one charter contains a section authorizing a modification or repeal of the whole charter, the other does not; one is just as much of an exemption contract with the state, while it lasts, as the other, and it seems manifest to me that the legislature, by the language they used, intended to violate neither, but to except and preserve them both, for they could not well have used better language to cover them both than they have used, naming both classes of contracts in the exception, those over which they had no control along with those over which they had control.

It was also suggested that the language, " other contracts with the state," must mean other *irrepealable* contracts with the state *not* in their charters; but as the state has no contracts with any of its corporations exempting them from taxation, except such as are in their charters, or in some act of the legislature relative thereto, and as the legislature is supposed to have known this, we are forced to the conclusion, under this construction, that they intentionally perpetrated the tautological anomaly of saying to corporations, " we except from the operation of the law all irrepealable contracts in your charters, and also all other irrepealable con-

tracts in your charters," for they could not be anywhere else. I think, however, that they could not have intended this. To except all irrepealable contracts with the state, and all other irrepealable contracts with the state, is remarkably strange; but the act does not say other *irrepealable* contracts with the state, but *other* contracts with the state, which necessarily includes *every* other contract, if it be an exemption contract. Nor am I able to see how they could have referred to contracts which have no existence, and which cannot have any existence, except through the medium of legislation, of which there are none. None, at all events, have been found. It seems to me, then, that we are shut up to the conclusion that the legislature intended to extend the exception to two different kinds of contracts, and they are the only two known to our laws containing exemptions from taxation, namely, those that are repealable and those that are not.

The Supreme Court seems to have adopted a different construction because, as they say, this construction makes the two clauses of the exception in effect contradictory, and rejects the word irrepealable as superfluous and unnecessary. I am unable to see the whole of this. The two clauses to my view are perfectly harmonious, because they show that the legislature did not intend, in this general and indefinite manner, to violate their contracts with either of the companies. If their intention was to save the one and destroy the other, they would certainly have said so in express and unmistakable terms, and would not, after having named the one class, namely, the irrepealable ones, have gone on and extended the exception to *other* contracts with the state, if they had meant thereby the very same ones which they had just named. *Other* contracts do not mean the same contracts. No contract has been found, and no one, I apprehend, can be found in any company's charter or elsewhere exempting it from taxation, other than the irrepealable ones, except the repealable ones, such as are found in charters like the one under consideration. There are no *other* contracts with the state except just these, and therefore, no other could have been intended.

As to the word irrepealable being superfluous and unneces-

State, Morris and Essex Railroad Co., Pros., v. Miller, Collector.

sary, it cannot be anything else in any sense. The only use that was made of it by the legislature was to show, that they did not intend to repeal such contracts. They could not have done this if they had made the attempt, and it was wholly superfluous to make such a declaration. But it was essential that they *should* declare, if such was their intention, that they did not intend to repeal any other exemption contract with the state, for over these they had control, and they might possibly have been held repealed by the general language of the section, if they had not been thus excepted. For such contracts there was perhaps a necessity for the exception, for the others there was none.

The counsel on the argument insisted that this word "irrepealable" had a purpose, and the court say the same thing, but no one has been able to discover what this purpose, having any importance, could have been.

I think, therefore, that the judgment of the Supreme Court should be reversed, and the tax excepts as to the lots set aside.

*For affirmance*—BEASLEY, C. J., CORNELISON, GREEN, CH., OGDEN, VREDENBURGH, WALES. 6.

*For reversal*—CLEMENT, KENNEDY, VAN DYKE. 3.

NOTE. No written opinion was delivered by the court in this case, affirming the judgment of the court below.

It was understood that the majority agreed with the opinion read in the Supreme Court by Justice ELMER.

In the more recent case of *The State* v. *The Mayor and Common Council of Jersey City,*\* in which the same questions were involved, with others, the Chief Justice delivered an opinion affirming the principles adopted in this case, and giving the reasons of the court at length.

CITED in *State* v. *Com'rs of Railroad Taxation*, 8 *Vroom* 235; *Same Case*, 9 *Vroom* 474.

\* *Vid. post.*